IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:06-HC-2194-BO

CLEVELAND MAXWELL JAMES, )
)
Petitioner, )
)
v. ) **ORDER**
)
ANTHONY HATHAWAY III, )
)
Respondent. )

Cleveland Maxwell James, a state inmate, petitioned the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent filed a motion for summary judgment. Petitioner filed a response, and the matter is ripe for determination.

### BACKGROUND

On January 26, 2006, in the Superior Court of Pender County petitioner was convicted after a jury trial of assault with a deadly weapon inflicting serious injury, assault on a female, and possession of a firearm by a felon. Petitioner pled guilty to having achieved the status of habitual felon and was sentenced to a consolidated term of 110 - 141 months imprisonment. At trial, Tonya Turner represented petitioner. On February 6, 2007, the North Carolina Court of Appeals issued an unpublished opinion finding no error. On appeal Thomas R. Sallenger represented petitioner. On October 16, 2007, this federal habeas corpus petition was filed.

### ISSUES

Petitioner raises one issue in this habeas corpus petition: actual innocence from being an habitual felon.

## STATEMENT OF THE FACTS

The North Carolina Court of Appeals summarized the facts from Petitioner's trial as follows:

> The State's evidence at trial tended to show the following: Defendant's cousin, Patricia Codie Miller (Miller), borrowed Defendant's car and drove to a local "hang out" known as the Corner on 22 February 2005. At the Corner, Miller got out of Defendant's car, left the car running, and went into the Corner. When Miller came back outside, defendant's car was gone. Miller smoked "crack" at the Corner that evening and testified that Defendant "pulled a gun on [her]" while she was at the Corner. Miller said she "took [Defendant's action] as a joke[.]"
>
> Miller testified she stayed out all night and smoked crack. The next morning, 23 February 2005, Miller returned to her home and found Defendant asleep. She awakened Defendant and the two of them walked to the Corner. Miller testified that Defendant "fuss[ed]" at her about his car and about what Miller was doing with her life. Miller and Defendant went their separate ways when they arrived at the Corner. Later, Tikisha Codie (Codie), Miller's niece and Defendant's cousin, drove up to the Corner. Defendant was in the car with Codie. Miller told Codie to "put [Defendant] out of your car. He just pulled a gun on me last night." Codie then drove away.
>
> Later that day, two men pulled up to the Corner in a car. Miller sat "on the edge of the car" talking to the two men. Miller testified Defendant walked up to the car and hit her in the head with a black handgun, causing her to bleed. She testified that when Defendant hit her, she "jump[ed] up" and Defendant then shot her in her left arm. Miller was asked if she had any doubt as to who shot her and she replied: "No, . . . [Defendant]."
>
> Nancy James (James), Miller's sister and Defendant's sister-in-law, was driving past the Corner on her way to work when she saw Miller trying "to pick herself up off of the ground." James stopped to see what was wrong and saw blood coming down Miller's face. Miller was also holding her arm, which James observed was "twisted all the way back." James testified she saw five or six people, including Defendant, near the Corner and that they all left the scene in different directions. James drove Miller to the rescue station, and on the way, James asked Miller who had done this to her and Miller said Defendant. At the rescue station, EMT personnel cut off Miller's sleeve, and James saw the bullet hole in Miller's arm.
>
> Miller was then transported by ambulance to the hospital. Miller had surgery on her arm; a plate, bolts and screws were put into her arm. She spent three or

2

four days in the hospital. At the time of the trial, she still experienced pain in her arm and had not been able to work since she was injured.

Codie testified she picked Defendant up at the Corner on 23 February 2005, and brought him back to the Corner approximately fifteen minutes later. Codie testified that while Defendant was in her car, he told her he was going to shoot Miller. Codie did not take Defendant seriously because "he [was] always fuss[ing]." When Codie returned to the Corner with Defendant, she saw Miller who told her to "let [Defendant] out because he had threatened to shoot [Miller]."

Detective Sergeant Jim Hock (Detective Hock), with the Pender County Sheriff's Office, testified he and Detective Sanders interviewed Miller while she was in the emergency room at the hospital. Miller informed Detective Hock that Defendant had approached her at the Corner, hit her in the head with a black handgun, and shot her. When Detective Hock asked Miller whether she was positive it was Defendant who had shot her, Miller confirmed she was positive because Defendant was her cousin.

Sergeant Linwood Darden (Sergeant Darden) with the Onslow County Sheriff's Office testified he came into contact with Defendant on 18 April 2005, when he was working on a separate investigation involving larceny of a motor vehicle. Sergeant Darden approached Defendant and two other individuals in Jacksonville. Sergeant Darden had his weapon out and instructed the three men to get face down on the ground. Defendant informed Sergeant Darden that he believed Sergeant Darden was serving a Pender County warrant on him in reference to Defendant shooting his female cousin. Defendant also informed Sergeant Darden he did not believe his cousin was going to proceed with the charges against Defendant because they were cousins.

Detective D. L. Wells (Detective Wells), with the Pender County Sheriff's Office, testified he accompanied Detective Hock to Jacksonville on 18 April 2005 to serve Defendant with an arrest warrant. Detective Wells advised Defendant of his *Miranda* rights. He asked Defendant about the incident with Miller. Defendant said he "had been in [a] fight with [Miller][,] . . . [and] had struck [Miller] in the head with his right fist after [Miller] had come at him with a razor." Defendant denied having a firearm and claimed he had not shot Miller.

(copy of unpublished opinion).

## DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court's review is governed by 28 U.S.C. § 2254(d), as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104, 132, 110 Stat. 1214 (1996). Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision "involve[s] an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The factual findings of the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). A petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Id.

4

Petitioner did not raise this exact claim in the state court. The claim of actual innocence or ineffective assistance of counsel therefrom was never argued in state court on appeal, and he has not filed a motion for appropriate relief.

The doctrine of exhaustion requires that before a claim may be presented in federal court on habeas review, it must have been presented to the state courts, giving those courts the first opportunity to consider the claim. Piccard v. Conner, 404 U.S. 270, 275 (1971); see 28 U.S.C. § 2254(b)(1) (2000). Furthermore, when a claim is first raised in a request for discretionary review, a petitioner cannot be said to have fairly presented his claim to the state courts. See Castille v. Peoples, 489 U.S. 346, 351 (1989).

Nevertheless, a claim that has not been adequately present to the state courts may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner now attempted to present it. See Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000); Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). If petitioner now filed a MAR in state court raising these claims, the claims would be barred under a statute that allows courts to dismiss the matter when, "[u]pon a previous motion made pursuant to this Article, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." N.C. Gen. Stat. § 15A-1419(a)(1) (2000); see also, Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998).

The Fourth Circuit has held that N.C. Gen. Stat. § 15A-1419, with the exception of section (a)(2), is an independent and adequate basis to support procedural default of ineffective

5

assistance of counsel claims.[1] See generally, McCarver v. Lee, 221 F. 3d 583 (4th Cir. 2000). Moreover, petitioner has not established cause and prejudice or that he has suffered a fundamental miscarriage of justice that would allow him to overcome the procedural default. Therefore, the issue is procedurally defaulted and the court is precluded from reviewing the claim.

In an abundance of caution, and because one of the issues raised by petitioner in the North Carolina Court of Appeals related to the habitual felon indictment and conviction, the court shall make an alternative ruling.[2] If the matter were somehow determined to have been previously raised, the claim is likewise without merit. Petitioner entered into a guilty plea. A valid guilty plea effects a waiver of all antecedent non-jurisdictional defects. Tollett v. Henderson, 411 U.S. 258, 267 (1973) (stating that "when a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea"); United States v. Willis, 992 F.2d 489, 490 (4th Cir.1993) (same). Defects in the indictment are not jurisdictional. United States v. Cotton, 535 U.S. 625, 631 (2002). Therefore, a valid guilty plea waives his argument concerning an alleged error in the habitual felon indictment. Because the issue of the validity of the plea appears dispositive, the court shall addresses this question.

---

[1] Although, subsection 1419(a)(2), which is based on the doctrine of *res judicata*, is not a proper ground upon which to base a procedural default, that subsection is not at issue in this matter. Green v. French, 978 F. Supp. 242, 251-52 (E.D.N.C. 1997), aff'd, 143 F.3d 865 (4th Cir. 1998), overruled on other grounds by Williams v. Taylor, 529 U.S. 362 (2000).

[2] The court notes here that this alternative ruling is done only in an abundance of caution because the actual innocence claim was not raised in the North Carolina Court of Appeals.

6

A valid guilty plea is one made intelligently and voluntarily with the advice of competent counsel. Tollett, 411 U.S. at 267. Petitioner does not specifically argue that his guilty plea was not knowing and voluntary. Further, the court finds that the transcript from the state court proceeding illustrates that petitioner entered into a valid guilty plea with competent counsel. The transcript reflects that petitioner swore in open court he had discussed his case with his lawyer. He also swore that the nature of the charges, as well as each element, had been explained to him by his attorney, and that his case was fully discussed including possible defenses. He stated he was satisfied with counsel's legal services. Petitioner stated he was guilty and that other than the written terms of his plea agreement, no other promises or threats existed which caused him to enter into the plea. The plea bargain further read as follows: "As a result of a guilty plea to hab. felon; all charges shall be consolidated for 1 judgment and the sentence shall be in the discretion of the court."

Absent extraordinary circumstances, these solemn in-court representations should be deemed conclusive. Via v. Superintendent, 643 F.2d 167, 171 (4th Cir. 1981); Little v. Allsbrook, 731 F.2d 238 n. 2 (4th Cir. 1984); see also Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). The court does not find that any extraordinary circumstances exist which preclude this conclusion. Therefore, the in-court representations are deemed conclusive and the plea is found to have been knowingly and voluntarily entered with the advice of competent counsel. Therefore, James is unable to show that if the decision by the appellate court were somehow read to incorporate and resolve the claim over the habitual felon conviction as raised within this court, that the decision was contrary to, or involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

7

Respondent's motion for summary judgment is ALLOWED, and the matter DISMISSED.

SO ORDERED. This the 28 day of August 2008.

TERRENCE W. BOYLE
United States District Judge